UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**ESTHER SALAS**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 5076
NEWARK, NJ 07101
973-297-4887

March 31, 2025

**LETTER MEMORANDUM**

Re:   *Craddock v. Denis Richard McDonough,*
      Civil Action No. 24-6587 (ES) (JSA)

Dear Parties:

Before the Court is defendant Denis Richard McDonough's ("Defendant") motion to dismiss *pro se* plaintiff Mary Agnes Craddock's ("Plaintiff") complaint (D.E. No. 1 ("Complaint" or "Compl.")).  (D.E. No. 9 ("Motion"); D.E. No. 9-1 ("Mov. Br.")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the Court **GRANTS in-part** and **DENIES in-part** Defendant's motion to dismiss.

I.    **FACTUAL BACKGROUND**[1]

At the outset, the Court notes that Plaintiff's Complaint is not a model of clarity.  In light of Plaintiff's *pro se* status, the Court gleans, as best it can, the following facts from the Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff, a "[w]hite [c]aucasian [f]emale" of European descent and a Jehovah's witness, filed the instant action against Defendant, the Secretary of the United States Department of Veterans Affairs ("VA"), alleging various discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*, on the basis of Plaintiff's "race, national origin, sex, religion, disability, and her prior protected EEO activities."  (Compl. at 1 & ¶¶ 4 & 16).  Plaintiff's grievances stem from her employment as a Cardiology Nurse Practitioner at the United States Department of Veterans Affairs Medical Center ("VAMC") in East Orange, New Jersey, where she had worked since 2020 and performed, among other things, cardiac stress tests using an electrocardiogram ("EKG") machine and transported patients in cardiac distress to emergency care.  (*Id.* at 1 & ¶¶ 17, 19).[2]  To perform stress tests using the EKG machine, Plaintiff

---

[1]   For purposes of the instant motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2]   Plaintiff worked at other VAMC locations since on or about 2009.  (*Id.* ¶ 17(c)).  Plaintiff maintains that her first-level supervisor and Cardiology Section Chief at the East Orange VAMC, Dr. Wojciech Rudzinski, knew that

must stand to document results while patients are on a treadmill. (*Id.* ¶ 20). The period at issue in the Complaint spans from August 17, 2022, to December 28, 2023. (*Id.* ¶ 2).

***Allegations Regarding Plaintiff's Disability.*** In 2018, prior to her employment with VAMC in East Orange, Plaintiff was diagnosed with "[v]ulvar varicosities." (*Id.* ¶ 21). Since "early 2021" Plaintiff was permitted to stand on an "anti-fatigue mat with cushion" (*id.* ¶ 24), and "[s]ince 2021" she was "allowed to use a standup desk" (*id.* ¶ 25). On or about January 2023, Plaintiff suffered from a "lateral meniscal tear on her right knee" and arthritis. (*Id.* ¶ 22). Plaintiff alleges that due to these impairments, she cannot "sit for more than 30 minutes on a hard surface," "walk more than 60 minutes," or "stand more than 20 minutes on a hard surface." (*Id.* ¶ 23). Plaintiff claims on or about February 21, 2023, "and prior," Jacob Serfass (Radiation/Nuclear Safety Officer) prohibited her from using the anti-fatigue mat while conducting cardiac stress tests. (*Id.* at 14 ¶ j[3]; *see also id.* ¶ 11). Finally, on or about December 4, 2023, Plaintiff returned to work from an "extended sick leave" and "discovered that her ergonomic [standup] desk . . . and her computer were removed from [her assigned work] room." (*Id.* at 15 ¶ q). Dr. Rudzinski allegedly told Plaintiff that he "didn't think [she was] coming back." (*Id.* at 15 ¶ r). Plaintiff also alleges that her equipment was "in fact removed" on or about November 14, 2023. (*Id.* at 12 ¶ p).

***Allegations Regarding Equipment and Access-Related Issues.*** Plaintiff maintains that since on or about August 26, 2021, she requested a key to the "nuclear medicine room" where cardiac stress tests were performed but was denied both a key and "timely access to her workroom." (*Id.* ¶ 35(b)(ii)–(iii)). Plaintiff claims that nearly "every day" from on or about October 5, 2022, to May 2, 2023, the door to the nuclear medicine room "was not open before the start of the first patient appointment," which resulted in delays because Plaintiff needed 10 to 15 minutes to setup the room before each cardio stress test. (*Id.* ¶ 35(b) & 35(b)(i)). Plaintiff further alleges that on or about October 11, 2022, and December 6, 2022, Marcia Cox (Supervisory Nuclear Medicine Technologist), John Green (Nuclear Medicine Technologist), and Marcello Beltran (Nuclear Medicine Technologist) locked the door to the nuclear medicine room, which prevented Plaintiff from entering to perform cardiac stress tests. (*Id.* ¶ 35(c); *see also id.* ¶¶ 12–14).

Separately, on or about November 30, 2022, John Green (Nuclear Medicine Technologist) unplugged Plaintiff's monitor. (*Id.* ¶ 35(d)). In addition, Green allegedly unplugged and duct taped a sheet over the refrigerator patients used and that Plaintiff oversaw. (*Id.* ¶ 35(e)). On or about December 8, 2022, Green and Cox allegedly entered Plaintiff's office while she administered a cardiac stress test. (*Id.* ¶ 35(f)). On or about February 8, 2023, Plaintiff reported these incidents to Terry C. Steward[4] (HR Consultant), Dr. Michele Young (Chief of Staff at VAMC in East Orange), and Dr. Dennis Quinlan (Chief of Medical Service at VAMC in East Orange). (*Id.* ¶¶

---

Plaintiff did not celebrate holidays, including Christmas and birthdays, in light of her religious belief. (*Id.* ¶¶ 8 & 16(a)).

[3]   The Complaint cites to both numbered and lettered paragraphs, including some numbered paragraphs with lower-case letters and roman numeral sub-paragraphs. Accordingly, the Court cites to page numbers, paragraph numbers, and sub-paragraph letters and/or roman numerals where necessary to distinguish the allegations.

[4]   Plaintiff refers to the HR consultant using two different spellings for his/her last name. (*Compare* Compl. ¶ 27 ("Terry C. Stewar**t**" (emphasis added)), *with id.* ¶¶ 35(d)(i), (e)(i) & (f)(i) ("Terry C. Stewar**d**" (emphasis added))).

35(d)(i), (e)(i) & (f)(i); *see also id.* ¶¶ 6–7 & 26–27). Management allegedly took no action in response. (*Id.* ¶ 35(d)(ii), (e)(ii) & (f)(ii)). Also, on February 8, 2023, Dr. Rudzinski "ordered Plaintiff to go home for coughing." (*Id.* ¶ 35(g)).

***Allegations Regarding Unwanted Advances from Colleagues.*** On or about August 17, 2022, October 5, 2022, and October 31, 2022, Plaintiff alleges that Marcello Beltran (Nuclear Medicine Technologist) "touched Plaintiff's long red hair and, when rebuffed" on October 31, 2022, Beltran told Plaintiff "[he] thought [he] meant something to [Plaintiff]." (*Id.* ¶ 35(a)). On or about December 2, 2022, Plaintiff emailed Dr. Young to complain about "unwanted touching on more than one occasion by . . . [Beltran]." (*Id.* ¶ 26). On or about February 8, 2023, Plaintiff allegedly reported these incidents to Steward and Dr. Young. (*Id.* ¶ 35(a)(i)). On the same day, Plaintiff allegedly emailed Steward, copying Dr. Young, Dr. Rudzinski, and Dr. Quinlan to complain about a "hostile" and "unsafe" work environment, including Plaintiff's subjection to "at least 2 fact finding reviews" and surveillance by Cox, Green, and Beltran. (*Id.* ¶ 27). In this email, Plaintiff purportedly sought guidance as to where she should go "to file an official complaint." (*Id.* ¶ 28).

On or about February 14, 2023, Plaintiff received information for filing an "EEO Complaint" from Steward. (*Id.* ¶¶ 28–29). Steward's email included Plaintiff's "direct chain of management command," including Dr. Young, Dr. Quinlan, and Dr. Rudzinski. (*Id.* ¶ 30). The next day, on or about February 15, 2023, Plaintiff replied in the email chain stating that she had "reached out to EEO and initiated that process." (*Id.* ¶ 31). Plaintiff maintains that in the same email she "alleged 'disparate treatment of female employees compared to male coworkers.'" (*Id.*).

Thereafter, on or about February 16, 2023, Plaintiff reported Beltran's alleged "harassment" to Steward claiming that he was "constantly walking in and out past [Plaintiff's] open door, talking loudly so as to attract [her] attention." (*Id.* ¶ 32). Dr. Young, Dr. Quinlan, Dr. Rudzinski, and Patricia O'Kane (Executive Medical Center Director at New Jersey Health Care System) were copied on the February 16, 2023, email. (*Id.* ¶ 32(a); *see also id.* ¶ 5). In the same email to Steward, Plaintiff maintains she complained of Beltran's surveillance of her, including that he sat "in the cardio stress test lab with the lights out after the tests were completed." (*Id.* ¶ 33). In addition, Plaintiff complained that Beltran "brushed up against her in the hallway outside the nuclear medicine area . . . after which [Beltran] complained that Plaintiff brushed up against him." (*Id.* ¶ 34). Moreover, on or about February 16, 2023, Plaintiff filed a "VA police report" alleging "sexual and non-sexual harassment" and raising "safety concerns" against Green, Beltran, and their supervisor, Cox, for the latter's failure to address Plaintiff's concerns. (*Id.* at 12 ¶ (r)(i)).

Dr. Helena K. Chandler (Chief, War Related Illness & Injury Study Center) was assigned to investigate Plaintiff's claims and on or about March 12, 2023, she determined that "Plaintiff's sexual harassment allegations and non-sexual workplace harassment [claims were] '[n]ot substantiated.'" (*Id.* ¶ 35(a)(ii)–(iii)). On or about September 7, 2023, Green allegedly "deliberately looked at Plaintiff's body up and down multiple times in a hallway as she was waiting for the elevator." (*Id.* at 11 ¶ o). Plaintiff maintains this incident was reported to Dr. Rudzinski both verbally and in writing on September 14, 2024, and that in reply, Dr. Rudzinski stated that he

would report the incident to Christopher Mele (Chief of Imaging Service at VAMC in East Orange).  (*Id.* at 11 ¶ o(i)–(ii)).

***Allegations Regarding an Investigation of Plaintiff.***  On or about May 1, 2023, Green, Beltran, and Cox allegedly filed a report, referred to as a "Report of Contacts," against Plaintiff for racism and creating a hostile work environment.  (*Id.* ¶ 35(h); *see id.* at 12 ¶ r(ii)).  Plaintiff maintains these individuals filed the false "Report of Contacts" in response to Plaintiff's "VA police report" filed on February 16, 2023, in which she alleged "sexual and non-sexual harassment and fear of her physical safety."  (*Id.* ¶ 35(h)(i)).

Thereafter, on or about May 9, 2023, Plaintiff became the subject of an "Administrative Investigation Board" ("AIB") inquiry to address the hostile work environment claims raised by Beltran, Green, and Cox.  (*Id.* ¶ 35(k) & (k)(i)).  Plaintiff claims that six days earlier, on or about May 3, 2023, "pending an [AIB] investigation," she was "involuntarily detailed up to 120 calendar days in erosion of duties to an RN position . . . where she [was] given administrative work without the opportunity to interact with patients."  (*Id.* at 10 ¶ l & l(i)).  The alleged "involuntary detail" purportedly "damaged Plaintiff's professional reputation and standing."  (*Id.* at 10 ¶ l(ii)).

On or about September 1, 2023, Heather Shangold (Board Chair) and Debbie Skeete-Bernard (Member) issued a "AIB" report, which recommended training, education, "appropriate corrective actions" against Plaintiff and that an organization chart be prepared so that "employees who work in the stress lab" would be "aware of [the] chain of command and how to properly address concerns."  (*Id.* at 10 ¶¶ (k)(ii)–(iii)).  Moreover, on or about September 6, 2023, Dr. Rudzinski "extended Plaintiff's involuntary detail . . . for up to 120 calendar days based on [the] pending AIB investigation."  (*Id.* ¶ 35(m)).  On or about December 13, 2023, Dr. Rudzinski verbally relayed the results of the AIB report, stating that "[t]hey won, you lost."  (*Id.* at 10 ¶ (k)(iv)).  On the same day, Dr. Rudzinski allegedly told Plaintiff that her "involuntary detail" would be "permanent."  (*Id.* ¶ 35(n)).

Plaintiff claims that after the AIB inquiry and other alleged conduct, she feared for her job and developed "severe medical symptoms" including "PTSD, anxiety, glucose withdrawal headaches, and achalasia."  (*Id* at 10 ¶ (k)(v)).

***Allegations Regarding a Proposed Admonishment to Plaintiff.***  On or about December 13, 2023, Dr. Rudzinski "issued a proposed admonishment for conduct unbecoming of a federal employee and for creating a hostile work environment" citing to Plaintiff's February 16, 2023 "VA police report."  (*Id.* at 12 ¶ r).  On or about December 19, 2023, the "proposed admonishment was indefinitely stayed" when Ashley Sands (Attorney from the U.S. Office of Special Council) allegedly intervened.  (*Id.* at 12 ¶ r(iii)).  The proposed admonishment allegedly "aggravated Plaintiff's feeling[s] of hostility and harassment in the workplace and fear of loss of her employment."  (*Id.* at 12 ¶ r(iv)).  Notwithstanding the "proposed admonishment," earlier the same year—specifically on or about June 9, 2023—Rudzinski rated Plaintiff "Outstanding" for her performance between February 3, 2022, and February 2, 2023.  (*Id.* at 13 ¶ s(ii)).

4

***Allegations Regarding the Withholding of Plaintiff's Credentials.*** On or about December 28, 2023, Plaintiff "learned that . . . Quinlan withheld her credentialing for the period between October 13, 2023, and December 18, 2023." (*Id.* at 13 ¶ s). This, too, allegedly contributed toward Plaintiff's fear that she would lose her job and that her medical conditions would worsen. (*Id.* at 13 ¶ s(i)).

*****

On or about March 28, 2023, and October 31, 2023, Plaintiff allegedly filed complaints with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 16 ¶¶ 37 & 40). She also filed amended complaints on or about August 25, 2023, and March 14, 2024. (*Id.* at 16 ¶¶ 38 & 41). On May 3, 2024, Plaintiff initiated this action, seeking reinstatement to her former position at the VAMC in East Orange and $300,000 in compensatory damages for her alleged "deterioration of health, loss of enjoyment of life, and for damage to her professional reputation and standing." (*Id.* at 16 ¶ 43).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that a pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and quotations omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted). Furthermore, in ruling on the present motion, the Court "must construe [Plaintiff's] complaint liberally because [s]he is proceeding pro se." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### III. DISCUSSION

#### A. Title VII Claims

##### i. Discrimination Claims

"Title VII prohibits an employer from discriminating based on an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and from retaliating against an employee for complaining about, or reporting, discrimination or retaliation, *id.* § 2000e–3(a)." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017). Title VII "prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Title VII discrimination claims "which rely on circumstantial evidence[ ] are controlled by the three-step burden-shifting framework set forth in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016). Because it is unclear whether Plaintiff is proceeding under a disparate treatment or disparate impact theory, the Court will analyze both. *See Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div.*, 759 F. Supp. 1089, 1095 n.10 (D.N.J. 1991). The Court also analyzes Plaintiff's claims under a hostile work environment theory.

To make out a prima facie case of disparate treatment discrimination, a plaintiff must allege (i) the plaintiff belonged to a protected class; (ii) she was qualified for the position in question; (iii) she was subject to an adverse employment action; and (iv) the adverse action was taken under circumstances giving rise to an inference of discrimination. *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). To survive a motion to dismiss, for each claim, while a plaintiff need not make out a prima facie case, she must allege enough facts that "raise a reasonable expectation that discovery will reveal evidence of the [necessary] elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Based on the Complaint, Plaintiff falls under protected classes as a Caucasian female of European descent and a Jehovah's witness. (Compl. ¶ 16). In addition, the Defendant does not dispute that Plaintiff was qualified for her position as a Cardiology Nurse Practitioner at the VAMC in East Orange. (*Id.* ¶ 17; *see generally* Mov. Br.). Putting aside whether Plaintiff suffered an adverse employment action,[5] her Title VII discrimination claims fail because she does not

---

[5] Defendant does not argue explicitly that the Complaint fails to plead an adverse employment action. Rather, Defendant maintains that "***many if not all*** the purported wrongs recounted in the complaint do not rise to the level of

identify any instances in which she was discriminated against—directly or indirectly—as a result of her race, color, religion, sex, or national origin. Other than merely alleging that Plaintiff is a Caucasian female of European descent and a Jehovah's witness, the Complaint provides no specific facts to suggest that Defendant discriminated against her *because of* her color, race, religion, sex, or national origin. (*See generally* Compl.). Nor does she plead facts that give rise to an inference of discriminatory intent. Rather, Plaintiff offers only conclusory allegations that she was discriminated against based on race, religion, sex, and national origin. (*See generally* Compl.). In addition, while Plaintiff alleges the races and/or ethnicities of some of her colleagues, (*id.* ¶¶ 12–13 (alleging Cox and Green are African American); *id.* ¶ 14 (alleging Beltran is a "light skinned Argentinian")), she does not sufficiently describe how these individuals were treated more favorably. (*See generally* Compl.).[6] In sum, the Court agrees that Plaintiff does not plead any facts to suggest the alleged "issues related to equipment and access in the nuclear medicine room resulted from hostility to her race, national origin, sex, or religion." (*See* Mov. Br. at 10). The same holds true "for the allegations of unwanted advances by coworkers, as well as the AIB inquiry and related detail and proposed admonishment, the temporary removal of a standing desk and antifatigue mat, and the withholding of her credentialing." (*See id.*).

For these reasons alone, Plaintiff has not established a Title VII disparate treatment discrimination claim that is plausible on its face. *See, e.g.*, *Holmes v. Gates*, 403 F. App'x 670, 673 (3d Cir. 2010) (finding "generalized grievances" about racial discrimination lack the "requisite specificity" to plausibly alleged a claim); *Subh v. Sec. Guard, Inc.*, No. 23-1462, 2023 WL 8447889, at *5 (D.N.J. Dec. 6, 2023) ("Plaintiff offers only conclusory allegations that he was consistently treated less favorably than employees outside his protected class. . . . Such generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination."); *Addison v. Amazon.com, Inc.*, No. 22-1071, 2022 WL 2816946, at *5 (D.N.J. July 19, 2022) (dismissing Title VII discrimination claim premised on religious animus where the complaint alleged "in conclusory fashion that '[plaintiff] being in such a spiritual manner' caused Amazon to discriminate against her"); *Kim v. Prudential Financial*, No. 19-19594, 2020 WL 2899259, at *3 (D.N.J. June 3, 2020) (collecting cases for the proposition that a plaintiff cannot maintain a Title VII discrimination claim when the complaint fails to provide any facts showing a causal connection between the discriminatory conduct and the plaintiff's protected characteristic); *Semple v. Donahoe*, No. 13-5198, 2014 WL 4798727, at *8 (D.N.J. Sept. 25, 2014) (dismissing Title VII gender discrimination claim where plaintiff failed to allege a "causal nexus between her being a female and the alleged adverse employment action"); *Varol v. Pave–Rite, Inc.*, 2011 WL 6012964, at *3 (D.N.J. Nov.30, 2011) (dismissing allegations of national origin discrimination under Title

---

an adverse employment action under Title VII because they did not affect the 'terms or conditions' of Craddock's employment." (Mov. Br. at 12 n.5 (emphasis added)).

[6] Although Plaintiff generally argues that these individuals were treated more favorably in opposing Defendant's motion to dismiss, even this conclusory assertion is absent from the operative complaint. (*Compare* D.E. No. 10 ("Opp. Br.") at 9, *with* Compl.). Also absent from Plaintiff's Complaint is any allegation that Defendant "failed to promptly and thoroughly investigate her allegations of sexual harassment." (Opp. Br. at 10). Because Plaintiff cannot amend her pleading in opposition to a motion to dismiss, the Court disregards factual assertions in Plaintiff's opposition brief that are absent from the Complaint. *See Ibrahim v. Emrich*, No. 24-1780, 2024 WL 4511982, at *4 (D.N.J. Oct. 17, 2024) ("Plaintiff cannot use his briefs to supplement or amend the [a]mended [c]omplaint." (citing *Ziemba v. Incipio Techs., Inc.*, No. 13-5590, 2014 WL 4637006, at *3 (D.N.J. Sept. 16, 2014))).

7

VII because plaintiff, who was given a "hard time" at work and was not hired for another season, did not set forth any evidence of discrimination).[7]

If Plaintiff is proceeding under a disparate impact theory, her Title VII claim likewise fails. "In a disparate impact case, the plaintiff must demonstrate that a facially neutral policy or practice by an employer has a disparate impact on the plaintiff's [race or other protected class]." *Churchill*, 759 F. Supp. at 1095 n.10; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645–46 (1989). "Unlike a disparate treatment case, proof of discriminatory intent is not required. Rather, to prove a claim, the plaintiff must show that a specific employment practice has a substantially disproportionate impact on the protected class." *Churchill*, 759 F. Supp. at 1095 n.10. Here, Plaintiff has not identified any facially neutral policy or practice which she alleges has a substantially disproportionate impact on Caucasians, females, and/or Jehovah's witnesses. (*See generally* Compl.). For example, although Plaintiff maintains that Dr. Rudzinski knew Plaintiff did not celebrate holidays or birthdays as a Jehovah's witness (*id.* ¶ 16(a)), she does not plead any facts to suggest that the VAMC in East Orange maintained a policy or practice that disproportionally impacted Jehovah's witnesses. Thus, any claim of disparate impact fails.

### ii. Hostile Work Environment Claim

To the extent Plaintiff brings a Title VII hostile work environment claim, her Complaint is deficient for the same reasons. To succeed on a hostile work environment claim, the plaintiff must establish that (i) "the employee suffered intentional discrimination because of his/her sex," (ii) "the discrimination was severe or pervasive," (iii) "the discrimination detrimentally affected the plaintiff," (iv) "the discrimination would detrimentally affect a reasonable person in like circumstances," and (v) "the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quoting *Mandel*, 706 F.3d at 168). To amount to severe or pervasive behavior, the alleged conduct must "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Thus, "'conduct must be extreme' to satisfy this standard, so 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate." *Nitkin*, 67 F.4th at 570 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

As with Plaintiff's disparate treatment claim, Plaintiff's hostile work environment claim

---

[7] Moreover, to assert a prima facie case of religious discrimination under Title VII, Plaintiff is required to establish that: (i) she held a sincere religious belief that conflicted with her job requirements; (ii) she informed her employer of the conflict; and (iii) she was disciplined for failing to comply with the conflicting requirement. *See Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017). Here, while Plaintiff alleges that Dr. Rudzinski knew Plaintiff did not celebrate holidays or birthdays as a Jehovah's witness (Compl. ¶ 16(a)), she does allege that her religious beliefs conflicted with her job duties, much less that she was disciplined for failing to comply with any conflicting duties. (*See generally id.*).

8

fails due to the lack of any facts evidencing that she suffered intentional discrimination because she was either Caucasian, a female, and/or a Jehovah's witness. *See Kocher v. McDonough*, No. 22-3808, 2023 WL 3689702, at *5 (E.D. Pa. May 26. 2023) ("[C]onduct motivated by a bad working relationship does not give rise to a hostile work environment claim under Title VII."). Moreover, although Plaintiff alleges Beltran touched Plaintiff's hair, surveilled her, brushed up against her in the hallway, and commented that "[he] thought [he] meant something to [Plaintiff]" (Compl. ¶¶ 33, 34 & 35(a)), and that Green looked Plaintiff up and down (*id.* ¶ 35(o)), these allegations are not so severe or pervasive to alter the conditions of Plaintiff's employment. *See, e.g.*, *Zucal v. Cnty. of Lehigh*, 660 F. Supp. 3d 334, 353 (E.D. Pa. 2023) (dismissing hostile work environment claim because, among other reasons, plaintiff failed to plead details regarding the alleged harassment—including, but not limited to, purported inappropriate touching—such that the court could not consider "the frequency of the harassment, whether it was severe or physically threatening or humiliating, or whether it unreasonably interfered with [plaintiff's] job performance"). Simply put, Plaintiff's allegations, as currently pled, are insufficient to support a hostile work environment claim.[8]

### iii. Retaliation Claim

Finally, the Court finds that Plaintiff has adequately stated a claim for retaliation under Title VII and the Rehabilitation Act.[9] To establish a prima facie case of retaliation, a plaintiff must demonstrate (i) "that she was engaged in a protected activity known to the employer;" (ii) "that she was thereafter subjected to an adverse decision by the employer;" and (iii) "that there was a causal link between the protected activity and the adverse employment decision." *Cortes v. Univ. of Med. and Dentistry of N.J.*, 391 F.Supp.2d 298, 311 (D.N.J. May 5, 2005); *see also Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994).

Here, Defendant does not appear to dispute that Plaintiff engaged in a protected activity by, for example, filing EEOC complaints on March 28, 2023, and October 31, 2023 (Compl. ¶¶ 37 & 40). (*See* Mov. Br. at 14–15 & D.E. No. 12 ("Reply Br.") at 1–5). At minimum, Plaintiff's EEOC complaints constitute protected activity. *See, e.g.*, *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 98 (3d Cir. 2016) (noting that the filing of an EEOC charge is "quintessential protected activity"). Furthermore, Defendant does not dispute Plaintiff's contention that her reports of alleged harassment by email to Steward, Dr. Young, Dr. Quinlan, Dr. Rudzinski, and O'Kane and her filing of a "VA police report" in February 2023 constituted protected activity. (*Compare* Opp. Br. at 3, *with* Rely Br.).

In addition, Defendant does not dispute that Plaintiff experienced at least one adverse

---

[8] To the extent Plaintiff asserts a hostile work environment claim under the Americans with Disabilities Act ("ADA"), this claim fails for an additional reason: the allegations do not reflect that the alleged hostile conduct is related to Plaintiff's disabilities. *See Johnson v. E. Orange VA Med. Ctr.*, No. 22-0721, 2023 WL 2770423, at *7 (D.N.J. Apr. 4, 2023) (finding plaintiff failed to meet the standard for establishing a hostile work environment based on alleged throwing of hearing aids at plaintiff, repeatedly writing plaintiff up, calling plaintiff a complainer, and monitoring how long plaintiff stepped away from her desk, among other allegations).

[9] The same standard governs Plaintiff's retaliation claim under the Rehabilitation Act. *See Lanza v. Postmaster General of U.S.*, 570 F. App'x 236, 240–41 (3d Cir. 2014).

employment action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Relevant here, Defendant merely argues that "***most of*** [Plaintiff's] allegations do not rise to the level of an adverse employment action." (*Id.* at 2 (emphasis added)). Indeed, Defendant entirely neglects to address whether "Plaintiff's involuntary detail assignment" that began on May 3, 2023, "during the pendency of the [AIB] investigation, which became permanent in December 2023 after the investigation concluded" amounted to adverse employment actions. (*See* Reply Br. at 2–3 (merely arguing that the alleged investigation of a complaint and Plaintiff's proposed admonishment did not constitute adverse employment actions); *see also* Compl. at 10 ¶ l & l(i)). Nor did Defendant address the allegations that Plaintiff's "detail assignment" resulted in an "erosion of [her] duties [as] an RN" such that "she [was] given administrative work without the opportunity to interact with patients" (*see generally* Mov. Br. & Reply Br.; *see also* Compl. at 10 ¶ l & l(i)). At minimum, the Court finds Plaintiff sufficiently alleged adverse employment actions by way of her "involuntary detail"—which involved an alleged erosion of Plaintiff's duties as a nurse without patient interaction—that began in early May 2023 and became permanent in December 2023. *See, e.g.*, *Subh*, 2023 WL 8447889, at *5 ("Plaintiff sufficiently alleges an adverse employment action through his transfer and demotion from Road Patrol following his complaints to [d]efendants.").

Thus, the Court must assess whether Plaintiff plausibly alleged that her protected activity caused the adverse employment action. A plaintiff can establish a causal inference of retaliatory discrimination through (i) an unduly suggestive temporal proximity between the protected activity and the adverse action, *see Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001); (ii) evidence of "antagonism or retaliatory animus" towards the plaintiff in the intervening period between the protected activity and the adverse employment action, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007); or (iii) where the "evidence, looked at as a whole, may suffice to raise the [causal] inference," *id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir. 2000)).

Plaintiff has alleged a sufficient temporal proximity between her EEOC complaints on March 28, 2023, and late October 31, 2023, and Plaintiff's "involuntary detail," which this Court construes as a degradation in Plaintiff's work responsibilities that occurred on May 3, 2023, and became permanent on December 13, 2023. (*See* Compl. at 15 ¶ o). "Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it may be sufficient by itself to create an inference of causality." *Dicks-Kee v. New Jersey Judiciary*, No. 12-6620, 2014 WL 7339458, at *9 (D.N.J. Dec. 23, 2014) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). Here, the temporal proximity between Plaintiff's EEOC complaints and her diminished work responsibilities were both *less than* two months. *See LeBoon*, 503 F.3d at 233 ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.").

Moreover, Plaintiff alleges that in response to her February 16, 2023 filing of a "VA police

10

report," Green, Beltran, and Cox filed a false "Report of Contacts" on May 1, 2023, which spurred the AIB investigation and led to Plaintiff's diminished work responsibilities only two days later. (Compl. ¶ 35(h)(i); *id.* at 10 ¶ l & l(i)).  At this juncture, these intertwined allegations support a plausible inference of an unduly suggestive temporal proximity between Plaintiff's protected activities and the adverse employment actions.  *See, e.g.*, *Fasold v. Just.*, 409 F.3d 178, 190 (3d Cir. 2005) (holding that "an inference of retaliation can be drawn" where adverse action took place "less than three months" after protected activity); *Ross-Tiggett v. Reed Smith LLP*, No. 15-8083, 2016 WL 4491633, at *8 (D.N.J. Aug. 25, 2016) (finding plaintiff adequately pled causation where, among other reasons, "approximately three months after her EEOC complaint was filed, she was asked to return all client confidential information and was unable to perform substantive billable work").

### B. Rehabilitation Act Claim

Next, the Court assesses Plaintiff's claim for disability discrimination under the Rehabilitation Act.  To allege a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of establishing "(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000) (quoting *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996)).

"To establish causation sufficient to state a claim for relief under the Rehabilitation Act, a plaintiff must plead facts showing that h[er] disability was 'the sole cause of discriminatory action' against h[er.]" *Sarboukh v. N.J. Governor Philip Murphy*, No. 22-1622, 2023 WL 5425622, at *4 (D.N.J. Aug. 23, 2023) (quoting *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019) (emphasizing that "the disability must be the sole cause of the discriminatory action" (citation omitted))).  Moreover, because the Rehabilitation Act's "causation requirement requires disability to be the sole cause of discrimination, an alternative cause is fatal to a[ ] [Rehabilitation Act] claim." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013).

Here, Plaintiff has not alleged that she suffered an adverse employment action solely because of her alleged disabilities—i.e., vulvar varicosities and a lateral meniscal tear with arthritis on the right knee.  Rather, the Complaint alleges a litany of reasons for the alleged discrimination Plaintiff purported faced.  (*See generally* Compl.).  In addition, while Plaintiff asserts that Serfass prohibited her from using the antifatigue mat and that her standing desk had been removed from her work area (*id.* at ¶ 35(i); *id.* at 14 ¶ j; *id.* at 15 ¶ q), she does not allege that these occurrences, standing alone, prohibited her from doing her job.  Moreover, Plaintiff alleges that when confronted about the removal of Plaintiff's antifatigue mat and standing desk following an "extended sick leave" (*id.* at 15 ¶ q), Dr. Rudzinski told Plaintiff that the removal occurred not because of her disability, but rather because he "didn't think [she was] coming back." (*Id.* at 15 ¶¶ q–r).

For these reasons, Plaintiff's Rehabilitation Act claim fails.  *See, e.g.*, *Mundy v. City of Pittsburgh*, No. 24-1685, 2024 WL 4988361, at *3 (3d Cir. Dec. 5, 2024) ("We agree Mundy

11

offered no evidence that she was suspended, terminated, or suffered discrimination because of having asthma."); *Kogan v. Becerra*, No. 21-10856, 2023 WL 8253074, at *5 (D.N.J. Nov. 29, 2023) ("[T]he record demonstrates that Kogan's alcoholism is not the 'sole cause' of HHS's alleged discriminatory action (the issuance of a 15-year exclusion order)."); *Antonelli v. Gloucester Cnty. Hous. Auth.*, No. 19-16962, 2019 WL 5485449, at *4 (D.N.J. Oct. 25, 2019) ("Plaintiff's claims under the Rehabilitation Act and the ADA fail because [p]laintiff does not sufficiently connect the dots between her alleged harm and her disability."); *Jackson v. Carter*, No. 16-8968, 2017 WL 2426862, at *5 (D.N.J. June 5, 2017) ("[T]he Complaint alleges nothing more than the fact that plaintiff wears a leg prosthesis and the fact that he was subjected to certain unsatisfactory conditions at work. There are literally no factual allegations at all to indicate that his disability played a role in his supervisors' decisions."); *Lindstrom v. St. Joseph's Sch. for the Blind, Inc.*, No. 15-8084, 2016 WL 5723658, at *5 (D.N.J. Sept. 30, 2016) ("But neither the [c]omplaint nor [p]laintiffs' opposition sets forth that Mr. Lindstrom was discriminated against *because* of his disability. Plaintiffs' Rehabilitation Act claim is therefore deficient regarding causation.").

Accordingly, for the reasons set forth above, Defendant's motion to dismiss (D.E. No. 9) is **GRANTED in-part** and **DENIED in-part**. Defendant's motion to dismiss is **GRANTED** with respect to Plaintiff's disability discrimination claim under the Rehabilitation Act and her Title VII discrimination and hostile work environment claims—all of which are **DISMISSED** *without prejudice*. To the extent Plaintiff can cure the deficiencies outlined herein, she may may file an amended complaint within thirty (30) days. Defendant's motion to dismiss is **DENIED** with respect to Plaintiff's retaliation claims under Title VII and the Rehabilitation Act. An appropriate Order accompanies this Letter Memorandum.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**