**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

<table>
<tr><td>CHAMBERS OF<br><b>ESTHER SALAS</b><br>UNITED STATES DISTRICT JUDGE</td><td>MARTIN LUTHER KING<br>COURTHOUSE<br>50 WALNUT ST.<br>ROOM 5076<br>NEWARK, NJ 07101<br>973-297-4887</td></tr>
</table>

March 27, 2026

**LETTER MEMORANDUM**

Re:     *Craddock v. Collins*,
        Civil Action No. 24-6587 (ES) (JSA)

Dear Parties:

Before the Court is Defendant Douglas A. Collins's ("Defendant") motion to dismiss *pro se* plaintiff Mary Agnes Craddock's ("Plaintiff") Second Amended Complaint (D.E. No. 23 ("Second Amended Complaint" or "SAC")) in-part.[1]  (D.E. No. 28 ("Motion"); D.E. No. 28-1 ("Mov. Br.")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, Defendant's Motion is **GRANTED** in-part and **DENIED** in-part.

I.      **FACTUAL BACKGROUND**[2]

On March 31, 2025, this Court issued a Letter Memorandum and Order granting in-part and denying in-part a motion to dismiss the original complaint.  (D.E. No. 15 ("March 31, 2025 Letter Memorandum" or "Mar. 31 Ltr. Mem."); D.E. No. 16 (Order)).  In the interest of judicial economy and to preserve judicial resources, the Court incorporates by reference the detailed recitation of allegations from the March 31, 2025 Letter Memorandum herein (*see* Mar. 31 Ltr. Mem. at 1–5), and will highlight the main differences between Plaintiff's original complaint and the SAC when assessing the Motion below.

Although Plaintiff re-pleads her race, gender, and national origin ("White Caucasian Female . . . born in the U.S.A. in European descent") (SAC ¶ 16[3]), she no longer explicitly alleges that she was discriminated and retaliated against based on "her color (White), race (Caucasian),

---

[1]     Plaintiff originally brought this action against Denis Richard McDonough, Secretary, U.S. Department of Veterans Affairs.  In filing the Second Amended Complaint, Plaintiff notes that "Doug Collins replaced Denis Richard McDonough in February 2025."  (SAC at ¶ 4 n.2).  Accordingly, Denis Richard McDonough is **DISMISSED** from this action.

[2]     For purposes of the instant Motion, the Court accepts the factual allegations in the SAC as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3]     As in the original Complaint, the SAC cites to both numbered and lettered paragraphs, including some numbered paragraphs with lower-case letters and roman numeral sub-paragraphs.  Accordingly, the Court cites to page numbers, paragraph numbers, and/or sub-paragraph letters/roman numerals where necessary to distinguish the allegations.

sex (Female), and her disability ([v]ulvar varicosities and lateral meniscal tear on right knee with arthritis)." (D.E. No. 1 ("Compl.") at 13). However, Plaintiff continues to maintain that this Court has jurisdiction under Title VII of the Civil Rights Act of 1964 ("Title VII"), and generally lists the protected classes of "race, color, gender, religion, [and] national origin." (SAC ¶ 1). She also generally alleges that "she was harassed and subjected to disparate treatment in [the] terms and conditions of her employment" at the United States Department of Veterans Affairs Medical Center in East Orange, New Jersey. (*Id.* at 1).

Notwithstanding these differences, the SAC includes many of the same factual allegations in support of Plaintiff's discrimination claims (broadly construed based on race, gender, disability[4]), hostile work environment claim, and retaliation claims. Accordingly, in light of Plaintiff's *pro se* status, the Court will construe the SAC as raising discrimination claims (based on race, gender, and disability), a hostile work environment claim, and retaliation claims under Title VII and the Rehabilitation Act. The Court notes, however, that while the SAC generally states that the "Department of Veterans Affairs engages in commerce for the purposes of [the] Rehabilitation Act [of 1973 ("Rehabilitation Act")], [and Title VII]" (SAC ¶ 15), it contains no other references to a claim under Rehabilitation Act as in the original complaint. (*Compare* Compl. at 1 & ¶ 1, *with* SAC).

As best as this Court can decipher, although rearranged slightly, the bulk of Plaintiff's allegations remain the same in the SAC. Plaintiff continues to maintain that she was "involuntarily detailed" in Cardiology Outpatient Services on May 3, 2023, for 120 calendar days, which had been extended on September 6, 2023. (SAC at 12–13 ¶¶ g–i). Plaintiff also continues to assert that on December 13, 2023, she "was verbally told" that the "involuntary detail" would be "permanent." (*Id.* at 13 ¶ i). She adds that on June 17, 2024, she was "involuntarily and officially transferred to Cardiology Outpatient Services." (*Id.* at 13 ¶ o). While Plaintiff continues to seek $300,000 in compensatory damages for the same injuries alleged in her original complaint, she no longer requests reinstatement of her former position. (*Compare* Compl. ¶ 43, *with* SAC ¶ 40).

As set forth in the Court's March 31, 2025 Letter Memorandum, it previously dismissed all of Plaintiff's discrimination and hostile work environment claims under Title VII and the Rehabilitation Act *without prejudice* for failure to state a claim. (Mar. 31 Ltr. Mem. at 6–9). In addition, the Court found that Plaintiff adequately stated a retaliation claim under Title VII and the Rehabilitation Act. (*Id.* at 9–11). The Court identified multiple instances of alleged protected activity and found that, at minimum, Plaintiff "sufficiently alleged adverse employment actions by way of her 'involuntary detail'—which involved an alleged erosion of Plaintiff's duties as a nurse without patient interaction—that began in early May 2023 and became permanent in December 2023." (*Id.* at 10). In addition, based on the totality of the allegations, the Court construed Plaintiff's "involuntary detail" as "a degradation in Plaintiff's work responsibilities that occurred on May 3, 2023," less than two months *after* she filed her first Equal Employment Opportunity Commission ("EEOC") complaint on March 28, 2023, and thus found Plaintiff sufficiently alleged causation by way of temporal proximity. (*Id.*). The Court also noted that intertwined allegations supported a plausible inference of unduly suggestive temporal proximity between Plaintiff's

_____

[4]    The SAC omits all references to Plaintiff's religion and religious beliefs. (*See generally* SAC).

protected activities and adverse employment actions; specifically, after Plaintiff filed a "VA police report" against certain co-workers, they, in turn, "filed a false 'Report of Contacts' on May 1, 2023, which spurred the AIB investigation and led to Plaintiff's diminished work responsibilities only two days later." (*Id.* at 10–11).

In moving to dismiss, Defendant challenges the scope of Plaintiff's retaliation claims. (*See generally* Mov. Br.). Defendant makes clear, however, that "the [Department of Veterans Affairs] is not relitigating the sufficiency of [the retaliation claim] for purposes of th[e] motion." (*Id.* at 9). Specifically, Defendant does not challenge the sufficiency of Plaintiff's protected activities as previously construed by this Court, including her (i) filing of EEOC complaints on March 28, 2023, and October 31, 2023; (ii) emailing HR and supervisors to report alleged harassment in February 2023; and (iii) filing a VA police report on February 16, 2023. (*Id.* at 10). However, Defendant asks the Court to "dismiss Plaintiff's retaliation claims that go beyond the alleged adverse actions identified in the Court's March 2025 opinion (i.e., the Report of Contacts and involuntary detail) for failure to plausibly allege the adverse action and causation prongs." (*Id.*). Defendant also seeks dismissal of Plaintiff's hostile work environment and class-based discrimination claims *with prejudice*. (*Id.* at 9 & 15).

Plaintiff opposed Defendant's Motion highlighting lists of "prior protected EEO activities" and "retaliatory actions." (D.E. No. 30 ("Opp. Br.")). Defendant filed a reply in further support of the Motion. (D.E. No. 31).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and quotations omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted). Furthermore, in ruling on the present motion, the Court "must construe [Plaintiff's] complaint liberally because [s]he is proceeding pro se." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III.    DISCUSSION

### A.    Discrimination and Hostile Work Environment Claims[5]

The Court has not identified any substantive differences between the allegations in the original complaint and those in the SAC with respect to Plaintiff's discrimination and hostile work environment claims. If anything, as highlighted above, it remains possible that Plaintiff no longer intends to pursue any discrimination/hostile work environment claims under Title VII or the Rehabilitation Act. (*See also* Opp. Br. (responding only to Defendant's arguments against dismissal of retaliation claims)). Indeed, the SAC does not contain any reference to Plaintiff's religious beliefs or affiliation, and contains only one passing reference to the Rehabilitation Act, along with scattered passing references to a hostile work environment. (*See generally* SAC). Accordingly, to the extent Plaintiff intended to continue pursuing these claims, they fail for all of the reasons already discussed in the Court's March 31, 2025 Letter Memorandum. (*See* Mar. 31 Ltr. Mem. at 6–9). Defendant's Motion to dismiss these claims is **GRANTED**.

Because this Court is mindful of its "obligation to construe a *pro se* litigant's pleadings liberally," *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 n.1 (3d Cir. 2009), it will provide Plaintiff one final opportunity to cure the deficiencies set forth in the March 31, 2025 Letter Memorandum. Thus, to the extent the SAC can be construed as raising hostile work environment and class-based discrimination claims under Title VII and the Rehabilitation, those claims are **DISMISSED** *without prejudice*. If Plaintiff wishes to pursue any of the aforementioned claims, she may file a third amended complaint that addresses all pleading deficiencies set forth in the Court's March 31, 2025 Letter Memorandum. In addition, any amended pleading shall clearly set forth all claims Plaintiff intends to raise in separate, individual counts with distinct headers that identify each specific claim alleged. In the event Plaintiff fails to comply with these directives within thirty (30) days, her discrimination and hostile work environment claims will be dismissed

---

[5]    The Court incorporates by reference the legal standards for discrimination and hostile work environment claims set forth in its March 31, 2025 Letter Memorandum.

*with prejudice*.

### B.    Retaliation Claims

To establish a prima facie case of retaliation, a plaintiff must demonstrate (i) "that she was engaged in a protected activity known to the employer"; (ii) "that she was thereafter subjected to an adverse decision by the employer"; and (iii) "that there was a causal link between the protected activity and the adverse employment decision." *Cortes v. Univ. of Med. and Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (D.N.J.); *see also Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff "must have an 'objectively reasonable' belief that the activity s/he opposes constitutes unlawful discrimination under Title VII." *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 322 (D.N.J. 2008).

A plaintiff can establish a causal inference of retaliatory discrimination through (i) an unduly suggestive temporal proximity between the protected activity and the adverse action, *see Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001); (ii) evidence of "antagonism or retaliatory animus" towards the plaintiff in the intervening period between the protected activity and the adverse employment action, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007); or (iii) "evidence, [when] looked at as a whole, may suffice to raise the [causal] inference," *id.* at 232 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir. 2000)).

Here, Defendant seeks dismissal of retaliation claims—beyond those that previously surpassed the motion to dismiss stage—based on other purportedly "*additional* adverse actions," including:

(i)      Two non-supervisory colleagues (Green and Cox) entered Plaintiff's office while she administered a cardiac stress test (SAC ¶ 32(a));

(ii)     Plaintiff's supervisor, Dr. Rudzinski, "ordered Plaintiff to go home for coughing" (*id.* ¶ 32(b));

(iii)    A nuclear safety officer (Serfass) "prohibited Plaintiff from using an anti-fatigue mat" (*id.* ¶ 32(d));

(iv)     Serfass denied Plaintiff a key to the nuclear medicine room (*id.* ¶ 32(e));

(v)      A nonsupervisory employee (Green) "looked at Plaintiffs body up and down multiple times in a hallway" (*id.* ¶ 32(j));

(vi)     Plaintiff's standing desk and computer were removed from her workplace while she was out on extended sick leave (*id.* ¶ 32(k));

(vii)    Dr. Rudzinski stated, upon Plaintiff's return from leave, that they "didn't think [Plaintiff] w[as] coming back" after returning from sick leave (*id.* ¶ 32(l));

(viii)   Dr. Rudzinski issued Plaintiff a "proposed admonishment" (*id.* ¶ 32(m)); and

(ix)     The Chief of Medical Service, Dr. Quinlan, withheld Plaintiff's "credentialing" for

approximately two months (*id.* ¶ 32(n)).

(Mov. Br. at 11–12 (emphasis added)).  As a preliminary matter, the Court notes that all these allegations appeared in the original complaint.  (*See* Compl. at 5 ¶ 27, 9 ¶ 35(i), 9 ¶ 35(j), 11 ¶ 35(o), 12 ¶ 35(p), 12 ¶ 35(q), 12 ¶ 35(r), and 13 ¶ 35(s)).  Yet, in moving to dismiss the original complaint, the movant merely argued, without specificity, that "[w]hile Craddock has alleged a litany of petty slights, inconveniences, and minor incidents, none rise to the level of a materially adverse action."  (D.E. No. 9-1 at 15; *see also id.* at 16–17 ("But critically missing from the complaint is any explanation as to which of the many wrongs that various employees of the VA allegedly perpetrated against her—Craddock alleges at least 19 of them—supposedly occurred because she engaged in an allegedly protected activity (and if so, which)." (internal citations omitted)).  Thus, it appears that Defendant requests a second bite at the proverbial apple.

Because the Court already found that Plaintiff adequately pled an adverse employment action, it need not address whether any of these other asserted adverse employment actions are sufficient to state a claim for retaliation at this juncture.[6]  *See, e.g.*, *Sargent v. Amazon.com, Inc.*, No. 23-1330, 2024 WL 3936490, at *3 (D. Del. Aug. 26, 2024) (declining to address "whether [p]laintiff's other asserted adverse employment actions [were] sufficient to maintain a discrimination claim" where the court previously found that plaintiff "adequately pled an adverse employment action based on [p]laintiff's assignment to custodial duties"); *see also Green v. Oklahoma*, No. 24-0456, 2025 WL 793575, at *7 (W.D. Okla. Mar. 12 2025) ("Because the Court concludes [p]laintiff has alleged at least one adverse employment action sufficient to support her claims, the Court does not address the other potential grounds for an adverse employment action raised in Defendants' Motion."); *Wilke v. Adams County School District*, No. 17-3116, 2018 WL 11633171, at *3 (D. Colo. June 28, 2018) ("Having concluded that Ms. Wilke has plausibly pled her claims for racial and religious discrimination under Title VII based on a hostile work environment and constructive discharge, I need not address at this time Ms. Wilke's additional arguments that she was subjected to other adverse employment actions as well.").  Thus, Defendant's motion to dismiss Plaintiff's retaliation claims based on alleged "additional" adverse employment actions is **DENIED**.

Accordingly, for the reasons set forth above, Defendant's Motion (D.E. No. 28) is **GRANTED** in-part and **DENIED** in-part.  An appropriate Order accompanies this Letter Memorandum.

*s/  Esther Salas*
**Esther Salas, U.S.D.J.**

---

[6]   Indeed, while it appears that many, if not most, of the alleged adverse actions listed above are mere grievances that do not arise to the level of a materially adverse action, it remains plausible that the alleged withholding of Plaintiff's credentialing may have seriously affected her.  To the extent Plaintiff files an amended complaint, she shall include all facts known to her regarding the alleged withholding of her credentialing, including the type of credentialing withheld and any and all impact it had on her employment.